**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CHERYL L. BORSANYI,

                                 Plaintiff,

                -against-

CHARLENE L. HUGGINS, Individually and as
Trustee of the Elizabeth Peglow 2015 Irrevocable
Trust dated August 7, 2-15, and Bruce D. Huggins,


                                Defendants.
-----------------------------------------------------------X

**DECISION
AND ORDER**

CV 17-7266 (CBA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Cheryl L. Borsanyi ("Plaintiff") commenced this action on December 13, 2017 against her sister Charlene L. Huggins ("Charlene"), individually and as Trustee of the Elizabeth A. Peglow Irrevocable Trust dated August 7, 2015, and Charlene's husband, Bruce D. Huggins ("Bruce") (collectively, "Defendants"). *See generally* Complaint ("Compl.") [DE 1].  Plaintiff brings claims for undue influence, conversion, breach of fiduciary duty and unjust enrichment in connection with Defendants' administration of the business and financial affairs of Plaintiff and Charlene's mother, Elizabeth Peglow ("Ms. Peglow"). *See id.*  The Complaint asserts that after August 2015, "Ms. Peglow's mental capacity was impaired as her health substantially and exponentially deteriorated physically, mentally and emotionally." *Id.* ¶ 21.  She died on March 27, 2017 at the age of 86. *Id.* ¶ 23.  Specifically, Plaintiff alleges that: (1) Defendants wrongfully caused transfers and withdrawals from at least Ms. Peglow's Citibank brokerage accounts, which Bruce controlled; and (2) refused to distribute Plaintiff's share of certain trust-

related proceeds following Ms. Peglow's death. *See id.; see also* Declaration of Attorney Marc R. Rosen, Esq. Submitted in Support of Plaintiff's Motion for Sanctions ("Rosen Decl.") [DE 45-1] ¶ 2. Before the Court at this time is Plaintiff's motion for sanctions related to Defendants' alleged failure to produce responsive documents in Defendants' possession despite "repeated false statements" that Defendants did not possess any responsive documents. *See id.* ¶ 1; *see also* Memorandum of Law in Support of Plaintiff's Motion for Sanctions ("Pl.'s Mem.") [DE 45-11] at 1. For the reasons which follow, Plaintiff's motion is DENIED.

## II. RELEVANT BACKGROUND

Plaintiff commenced this action by filing the Complaint on December 13, 2017. *See generally* Compl. Defendants answered on January 8, 2018. *See* Defendants' Answer ("Ans.") [DE 10]. The Court conducted an Initial Conference on March 6, 2018, *see* March 6, 2018 Civil Conference Minute Order [DE 16], and implemented an Initial Case Management and Scheduling Order, setting various discovery deadlines as well as a date for the Discovery Status Conference. *See* Case Management and Scheduling Order ("CMSO") [DE 17]. According to the CMSO, requests for production of documents and interrogatories were to be served by April 10, 2018 and responses were to be served by May 24, 2018. *See id.* The Court also set a June 18, 2018 deadline for any letter motions seeking Court intervention with respect to any unresolved objections to discovery responses. *See* DE 16.

On June 13, 2018, Plaintiff made an application with the consent of the Defendants to extend the June 18, 2018 letter motion deadline by one week. *See* Motion for Extension of time to File Discovery Motions [DE 19]. The Court granted Plaintiff's application the next day, ordering that discovery motions be filed by June 25, 2018. *See* June 14, 2018 Electronic Order.

In accordance with the Court's Order, Plaintiff filed a motion on June 25, 2018 to compel compliance with certain discovery requests propounded in Plaintiff's First Request for the Production of Documents and First Set of Interrogatories. *See* Letter Motion to Compel [DE 20]. However, the Court rejected Plaintiff's submission for failure to comply with Local Rule 37.1 and granted Plaintiff leave to re-file. *See* DE 24. Plaintiff re-filed a compliant motion on July 2, 2018. *See* Re-filed Letter Motion to Compel [DE 22]. Plaintiff sought Court intervention in connection with Defendants' responses to Interrogatory Nos. 7, 12 and 16-17 and Requests for Production Nos. 4-5, 26, 28-30, 43, 48-49, 53, and 57-58. *Id.* Plaintiff also sought attorneys' fees under Fed. R. Civ. P. 37, arguing that Plaintiff "has spent substantial amounts in legal fees . . . trying to get [Defendants] to honor their discovery obligations, and preparing this motion." *Id.* at 17.

Defendants opposed Plaintiff's motion on July 2, 2018, asserting that "[t]he efforts of Plaintiff's attorney . . . demanding the disclosure of information that will not lead to the finding of facts or information, are actually designed to frustrate, harass and embarrass my clients while generating a tremendous amount of unnecessary legal work and fees." DE 24 at 1. On July 17, 2018, the Court issued a Decision and Order addressing each of the disputed discovery requests and ultimately granting in part and denying in part Plaintiff's motion. *See generally* Decision and Order [DE 25]. Among other things, the Court ordered that Defendants: (1) produce supplemental discovery responses consistent with the Court's Order within 21 days; (2) file an affidavit within 14 days to the extent Defendants take the position that they possess no documents responsive to Request for Production No. 43; (3) produce a privilege log for any documents being withheld on the grounds of any privilege, including those otherwise responsive to Request for Production No. 4, and send a copy of the privilege log, along with the actual

3

documents listed in the log, to the Court for an *in camera* review.[1] *See generally id.* The Court declined to award attorneys' fees to Plaintiff for having made the motion to compel. *Id.* at 4. The Court cautioned both sides that "the Court expects full cooperation in the discovery process going forward," and stated that "appropriate action will be taken" "[s]hould the Court find that any party is not cooperating in good faith." *Id.* On July 30, 2018, Charlene and Bruce Huggins filed individual affidavits stating that they are not in possession of any documents or communications responsive to Request for Production No. 43. *See* Defendants' Declarations [DE 29-30].

Following some confusion among the parties as to the status of Defendants' supplemental production, the Discovery Status Conference, initially scheduled for August 10, 2018, was adjourned to August 20, 2018 with the deadline for a joint status report adjourned to August 17, 2018. *See* August 8, 2018 Electronic Scheduling Order. On August 17, 2018, Plaintiff filed the parties' joint status report, advising that: (1) Plaintiff produced all requested documents on or about May 24, 2018; (2) Defendants supplemented their document production and represented that they had produced all outstanding responsive documents; and (3) Defendants represented that they were not in possession of any documents responsive to Request for Production No. 4 and therefore would not be producing a privilege log or delivering any documents for *in camera* review. *See* Discovery Status Report [DE 34] at 1.

Based on Defendants' responses, Plaintiff's counsel again asked the Court to sanction Defendants for frivolous conduct with respect to Defendants' response to Request for Production No. 4. *See id* at 2. Plaintiffs complained that Defendants had changed course several times as to

---

[1] Request for Production No. 4 seeks all communications between Defendants concerning, among other things, (i) Ms. Peglow; (ii) Ms. Peglow's ability to handle or address her own financial and other needs and expenses; and (iii) the execution, revocation and/or other terms of the 2012 Will. *See* Re-filed Letter Motion to Compel at 5.

4

whether Defendants actually possessed documents responsive to Request for Production No. 4.

*Id.* Plaintiff asserted that:

> For months, [D]efendants have asserted that these communications are confidential and objected to their production on the ground of the marital privilege. They did so in writing, in their formal document response and did so in at least two subsequent telephone calls, including in a meet and confer; and even stated that if Ms. Borsanyi wanted to review these communications, she would have to subpoena them from Citigroup, Bruce Huggins' employer. Defendants' counsel made clear that these communications existed. As a result of [D]efendants' gamesmanship, Ms. Borsanyi thereafter was compelled to serve a second subpoena on Citigroup specifically related to Citigroup's privacy and email usage policies (and communicated repeatedly with Citigroup regarding this subpoena), in order to prove that Mr. Huggins had no expectation of privacy when emailing with his wife, Charlene Huggins.
>
> \*    \*    \*
>
> [Defendants] insinuated the communications existed but said they were privileged and would not be produced without a court order, let Ms. Borsanyi move to compel their production, then asserted the "marital privilege" to the Court and let Your Honor rule on the objection, all the while keeping secret their position that supposedly there are no responsive documents (which remains to be seen).

*Id.* at 2-3. Plaintiff argued that the Court should impose sanctions, including at least some reimbursement of Plaintiff's legal fees, to compensate Plaintiff for the complete waste of time caused by Defendants' position with respect to Request for Production No. 4. *Id.* at 3.

In addition, Plaintiff's counsel apprised the Court of his efforts to obtain documents from non-party Citigroup, Bruce's employer. *See id.* at 4-5. Counsel informed the Court that (1) Plaintiff had served a subpoena on Citigroup on April 10, 2018; (2) Citigroup made a deficient response on May 7, 2018, but agreed to comply fully with its obligations under the subpoena and produce additional documents on or before July 6, 2018, "including checks showing the *actual disposition* of the Citigroup assets and where the withdrawn and transferred securities and cash went in the final months and years of [Ms.] Peglow's life"; (3) Citigroup made a supplemental,

5

yet deficient production, on July 19, 2019; and (4) Citigroup agreed during a conversation with Plaintiff's counsel on August 3, 2018 to produce the remaining documentation shortly. *Id.* at 4-5.

In their portion of the joint status report letter, Defendants advised that Plaintiffs had misstated the facts with respect to Request for Production No. 4. *Id.* at 3. Defendants pointed out that they had consistently represented to Plaintiff, including in Defendants' June 18, 2018 Amended Response, that Defendants were not in possession of any non-privileged relevant documents and that Defendants had produced all documents within their possession, custody, or control. *Id.* Defendants underscored that following the Court's July 16, 2018 Order, which limited the temporal scope of Request for Production No. 4, Defendants conducted a diligent search for documents and determined that they were not in possession of any documents responsive to this request, which Defendants communicated to Plaintiff in their Second Amended Response to Demand No. 4. *See id.* at 4. Defendants maintained that sanctions were therefore inappropriate and that Plaintiff's demand for sanctions was "incredibly ironic." *Id.*

The Court conducted the Discovery Status Conference on August 20, 2018 and addressed Request for Production No. 4 as well as the Citigroup subpoena. *See* August 20, 2018 Civil Conference Minute Order. With regard to Request for Production No. 4, the Court deferred "ruling on the issue of legal fees until Plaintiff's counsel receives the documents requested from Citigroup." *Id.* at 1. The Court cautioned that, "[i]f, based on Citigroup's production, it is determined that there are documents responsive to Request No. 4 and that Defendants are in possession of those documents, then the Court will consider a renewed request for relief from plaintiff's counsel." With regard to the subpoena served upon Citigroup, the Court directed

6

Plaintiff's counsel to notify Citigroup that it had until September 12, 2018 to fully comply with the subpoena. *Id.*

On September 5, 2018, Citigroup's outside counsel, Jonathan Perrelle, Esq., contacted Plaintiff's counsel in connection with the non-party subpoenas and advised that he had identified responsive emails between Bruce and Ms. Peglow's then attorney, Steven Kramer. *See* Rosen Decl. ¶ 15. Attorney Perrelle asked Plaintiff's counsel for Plaintiff's position on producing these emails. *Id.* In response, Plaintiff's counsel stated, "[n]ever having seen the email, I am not in a position to have a meaningful conversation about it with defendants' counsel. I suggest you show the email to Mr. Huggins' counsel and get her position on the subject. I will make a motion afterwards, if necessary/appropriate." *Id.* (citing Ex. G)

Thereafter, on September 7, 2018, Attorney Perrelle contacted Defendants' counsel, stating "[t]hese documents are responsive to the subpoenas, but we are advising you of them prior to their production in light of the potential privilege issues involved." *Id.* ¶ 16 (citing Ex. H). Thereafter, Defendants served their Third Amended Response to Plaintiff's First Request for the Production of Documents dated September 10, 2018. *Id.* Notably, Defendants informed Attorney Perrelle that Defendants were not objecting to the production of the Citigroup documents and emails. *Id.*

On October 11, 2018, Plaintiff served Defendants with the instant motion for sanctions and contemporaneously sent a letter to the Court proposing an agreed-upon briefing schedule. *See* Pl.'s Mem.; Letter to Judge Tomlinson regarding Sanctions Motion [DE 42]. According to the briefing schedule, Defendants would oppose the motion by November 19, 2018 and Plaintiff would reply by November 19, 2018. *See* DE 42. The Court approved the proposed briefing

schedule on October 12, 2018, *see* October 12, 2018 Electronic Scheduling Order, and the fully briefed motion was filed on November 19, 2018.

### III.   PLAINTIFF'S MOTION

Plaintiff alleges that,

> [t]ime and again, over many moths, in response to [Plaintiff's] counsel's inquiries and in response to motion practice and a discovery order, [D]efendants and their attorney represented that they were not in possession of responsive documents . . . [causing Plaintiff's counsel to incur] substantial legal fees addressing [D]efendants' discovery practices, preparing a lengthy discovery motion and other related applications, serving third-party subpoenas, and basically running in circles and chasing down responsive documents that were in [D]efendants' possession all along.

Pl.'s Mem. at 1. According to Plaintiff, Defendants produced hundreds of additional pages of documents, which they possessed all along, only when they learned that Citigroup was going to be producing responsive documents which Defendants possessed and should have produced months ago. *See id.* at 9. Plaintiff highlights seven alleged misrepresentations -- made by the Defendants to the Court and Plaintiff's counsel -- involving the assertion that Defendants had produced all responsive documents in their possession, custody or control. *See id.* at 8-9. For their discovery abuses, Plaintiff argues that Defendants should be sanctioned under: (1) Fed. R. Civ. P. 26 for falsely certifying discovery responses and disclosures as complete and correct and employing misleading discovery tactics, *see id.* at 4-5; (2) Fed. R. Civ. P. 37 for failure to comply with discovery obligations and failure to obey the Court's discovery Orders, *see id.* at 5-7; (3) 28 U.S.C. § 1927 for unreasonably multiplying the proceedings in this action and causing delay; and (4) the Court's inherent power to sanction for blatant misconduct, *see id.* at 7-8.

Defendants point out that "[t]he documents that consisted of the September 10, 2018 production were discovered in an old laptop computer," and were not even responsive to Request

8

for Production No. 4, which formed the basis for the Citigroup subpoena about which Plaintiff complains here. *See* Def.'s Opp'n at 1-2; 4. As stated by Bruce Huggins in his Declaration submitted in opposition to Plaintiff's motion here:

> 3. When we received Plaintiff's demand for documents, at my attorney's request my wife and I searched our files at home and on our personal computers. It was our understanding that we were required to search every location where we can reasonably expect to find responsive documents and to produce all documents that could be responsive to Plaintiffs demands and instructions. We then produced all documents that we reasonably believed to be in response to Plaintiffs demands. We searched for these documents even though we also believed that many of Plaintiffs demands were unreasonable as they demanded the production of each and every document that spanned Elizabeth Peglow's life, they demanded documents that were irrelevant to the issues in this action and were also protected by privilege. Nevertheless, we searched in the places that we reasonably believed the documents may have been located, we followed the instructions and we produced all responsive documents that we believed were in our possession at that time.
>
> 4. When the Court issued an order in July, 2018, it narrowed the scope of time to guide us in our document production. Now that we had a defined period in time established by the Court, we followed these guidelines and confirmed that we had produced all documents that the Court deemed to be relevant to this action. The Court also directed me to review and mark over 3,000 pages of documents among other requirements. Nevertheless, at my counsel's request we again searched our home computers and files and were unable to locate any documents that were not already produced.
>
> \* \* \*
>
> 6. Following a conference with the Court in late August, 2018, at my counsel's request I again searched my personal computer and files to ensure that we had produced all documents demanded by Plaintiff.
>
> 7. During the weekend of September 8, 2018, I found an old laptop computer under my desk that I had completely forgotten about. I pulled the computer out, hooked it up and found that it was still working. I immediately searched for documents responsive that had anything to do with Plaintiffs demands. I had to search in archive folders that I believed had been deleted, and I found some emails and other documents. I was unsure if these documents had been produced or if they were covered by the demands in the subpoenas served on Citibank, but in any event, I printed the documents and delivered them to my attorneys on September 10, 2018. It is my understanding that the documents were served the same day that I delivered them to my attorneys.

November 7, 2018 Declaration of Bruce D. Huggins ("Bruce Decl.") ¶¶ 4-7.

Defendants argue that sanctions are generally inappropriate in circumstances such as these since Plaintiff has failed to set forth any evidence of bad faith or prejudice. Likewise, Defendants maintain that their September 10, 2018 production has not caused any delay in this action. *See* Defs.' Opp'n at 4-11. Defendants note that with the exception of the September 10, 2018 production, Plaintiff has made no allegation that Defendants served a late response, failed to comply with a scheduling order, or otherwise failed to produce any outstanding discovery. *Id.* at 6. Further, Defendants emphasize that there is no allegation that any document produced by Citigroup is responsive to Request for Production No. 4. *Id.*

## IV. DISCUSSION

### A. Applicable Legal Principles

#### 1. Rule 26

Fed. R. Civ. P. 26(g) requires that an attorney certify, by affixing his signature, that: (1) with respect to a disclosure, it is true and complete; and (2) with respect to a discovery request, response, or objection, these items are not frivolous, improper, unreasonable, unduly burdensome or expensive. Fed. R. Civ. P. 26(g). "Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by explicitly encouraging the imposition of sanctions." *JMC Rest. Holding, LLC v. Pevida*, No. 14CIV6157, 2016 WL 3351007, at *5 (E.D.N.Y. June 14, 2016) (citation omitted). Rule 26(g)(3) therefore provides that if an attorney's certification violates Rule 26(g)(1) "without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed.R.Civ.P. 26(g)(3). "The sanction for this violation may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Markey v. Lapolla Indus., Inc.*, No. CV 12-4622, 2015 WL 5027522, at *18

(E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted*, No. 12-CV-4622, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016) (internal quotation marks and citation omitted).

"As the plain language of Rule 26(g)(3) implies, the imposition of sanctions for a violation of Rule 26(g) is mandatory, although a court has discretion over which sanction it must impose." *JMC Rest. Holding, LLC v. Pevida*, No. 14CIV6157, 2016 WL 3351007, at *5 (quoting *Markey*, 2015 WL 5027522, at *18 (internal quotation marks and alternations omitted). Significantly, courts interpreting Rule 26(g)(3) have required that there be harm resulting from the alleged violation of the Rule. *See id.*; *Markey*, 2015 WL 5027522, at *18; *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, No. 99 CIV. 0275, 2004 WL 1811427, at *23 (S.D.N.Y. Aug. 12, 2004) ("[S]anctions under Rule 26(g) are not appropriate when a party has not been harmed by the failure of his adversary.") (internal quotations omitted)).

2. **Rule 37**

Under Rule 37(b)(2), a court may grant sanctions against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). "Although bad faith is not required to impose sanctions pursuant to Rule 37(b)(2), intentional behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary sanctions." *JMC Rest. Holding, LLC*, 2016 WL 3351007, at *5; *see also Metropolitan Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003)); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) ("[T]he severity of [the] sanction must be commensurate with the non-compliance."). Importantly, whether and to what extent to impose sanctions "is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion." *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir.

11

1990) (citing, inter alia, *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam)).

Under Fed. R. Civ. P. 37(c), a court may impose sanctions in the event of a party's failure to disclose, to supplement an earlier response, or to admit as required by Rule 26(a) or (e), "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of this Rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *JMC Rest. Holding, LLC,* 2016 WL 3351007, at *6 (citing *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)). "The Rule permits a court to impose a variety of sanctions for discovery-related abuses, including the payment of the reasonable expenses, including attorney's fees." *Id.* (internal quotation marks, alterations, and citation omitted). As relevant here, where "the alleged misconduct is the non-production of relevant documents, district courts have broad discretion in fashioning an appropriate sanction." *JMC Rest. Holding, LLC,* 2016 WL 3351007, at *6 (quoting *Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 293 (E.D.N.Y. 2014)).

"Factors relevant to the court's determination of appropriate sanctions are: '(1) the willfulness of the noncompliant party or the reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party had been warned of the consequences of his noncompliance.'" *Martiny v. Introcaso-Allison*, No. 17-CV-09559, 2019 WL 4593613, at *2 (S.D.N.Y. Sept. 23, 2019) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995))).

### 3. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, any attorney in a federal court who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Bad faith is the touchstone of an award under this statute." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). Accordingly, the Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (citation omitted); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'") (citation omitted); *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982) ("To justify the imposition of excess costs of litigation upon an attorney [under § 1927] his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.").

### 4. The Court's Inherent Authority

Similarly, under the exercise of a court's inherent power to supervise and control its own proceedings, the bad-faith exception to the "American Rule" – that litigants generally bear their own litigation expenses – allows a court to award attorneys' fees where there is "both 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes,' and 'a high degree of specificity in the factual findings of [the] lower courts.'" *Oliveri*, 803 F.2d at 1272 (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986)). The standard a court

uses in determining whether to impose sanctions under its inherent authority is substantively similar to the standard a court uses in determining whether to impose sanctions under § 1927. *See Oliveri*, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent powers.") (citation omitted).

### B. Application to the Current Circumstances

Here, Plaintiff maintains that the responses of Defendants' counsel to Plaintiff's discovery requests, including repeated representations that all responsive documents had been produced, were false and made without concern for Defendants' discovery obligations. *See* Pl.'s Mem. at 5. Plaintiff's counsel relies on *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, in which defendant's counsel was sanctioned for having made repeated unsupported representations that all responsive documents had been produced. 212 F.R.D. 178, 222 (S.D.N.Y. 2003), *adhered to on reconsideration*, No. 00 CIV. 3613, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004). In *Metro. Opera Ass'n*, Judge Preska held that "defendant's counsel's participation in and supervision of discovery . . . was in no way 'consistent with the spirit and purposes of Rules 26 through 37,' and mandatory sanctions under Rule 26(g) must be imposed." *Id.* Here, Plaintiff charges that Defendants' counsel have acted similarly to the defendants' counsel in *Metro. Opera Ass'n*, making unsupportable representations without any concern for Defendants' obligations under the Federal Rules.

Further, Plaintiff asserts that Defendants are charged with knowledge of what documents they possess, including those that were produced on September 10, 201. *See* Pl.'s Mem. at 6-7. Plaintiff argues that Defendants have unreasonably and vexatiously delayed proceedings in this action. *Id.*

14

In opposition, Defendants maintain that the facts of the instant case do not rise to the level of conduct of the sanctioned party in *Metro. Opera Ass'n.* The "innumerable discovery failures" by the defendants in that case took place over a 19-month period and were largely uncontested by defendants, whose counsel did not appreciate their discovery obligations under Fed. R. Civ. P. 26. Defs.' Opp'n at 3 (citing *Metro. Opera Ass'n, Inc.*, 212 F.R.D. at 221 n.27). With regard to the instant case, Defendants' counsel points out that the documents which made up the September 10, 2018 production were discovered on an old laptop computer shortly after the Court's July 17, 2018 Order refining the scope of discovery and were produced in good faith almost immediately thereafter. *See* Defs.' Opp'n at 4. Defendants' counsel underscores that unlike the defendants in *Metro. Opera Ass'n, Inc.*, Defendants here "were instructed to search for documents in 'every location [they could] reasonably expect to find responsive documents.'" Defs.' Opp'n at 4-5 (citing Huggins Decl. ¶ 3). Defendants' counsel also asserts that: (1) there is no history of noncompliance in this instant case; (2) absolutely no evidence of prejudice; and (3) no proof of delay since [at the time the motion was filed] discovery was held in abeyance. *Id.* 5-9.

Sanctions are generally not warranted here. First, the Court finds the current circumstances readily distinguishable from *Metro. Opera Ass'n, Inc.* Although Defendants indeed did produce documents here after representations that all documents had been produced, the Court notes that Defendants made the September 10, 2018 production approximately three months after the original discovery response date and one month after the supplemental deadline set by the Court in July 2018. Further, the Court finds that, with the exception of the September 10, 2018 document production, there is no allegation that (1) Defendants served a late response; (2) Defendants failed to adhere to any scheduling order deadline; (3) additional

discovery is outstanding; or (4) documents produced by Citigroup are responsive to Request No.4.[2]

Further, Defendants have provided reasonable justification for the September 10, 2018 production and prior representations that Defendants had produced all responsive documents in their possession. Although the disclosure in Bruce Huggins' Declaration concerning the September 10, 2019 production – specifically, that "during the weekend of September 8, 2018, [he] found an old laptop computer under [his] desk that [he] had completely forgotten about," (Bruce Decl. ¶7) might raise an eyebrow as to its timing, the Court has no concrete evidence of bad faith. Had Bruce Huggins never disclosed the laptop or attempted to destroy its contents, then the case for bad faith would be evident and more likely give rise to a spoliation motion. However, that is not the case here. In the Court's view, it is not unreasonable that Defendants' counsel *again* instructed Defendants to search for any additional documents following (1) the Court's July 17, 2018 Decision and Order refining the scope of discovery, and (2) the August 20, 2018 Status Conference with the parties. Bruce states that upon finding the laptop, he "immediately searched for documents responsive that had anything to do with Plaintiff's demands," including in "archive folders [he] believed had been deleted." *Id*. ¶ 7. Although the Court finds it odd, at best, that Defendants did not previously find this laptop or remember that it existed, Defendants maintain that throughout discovery they searched "every location where [they could] reasonably expect to find responsive documents," including in their personal

---

[2] That Plaintiff does not allege that any document produced by Citigroup is responsive to Request for Production No. 4 is significant because the Court indicated that it would entertain a renewed request for sanctions from Plaintiff "[i]f, based on Citigroup's production, it is determined that there are documents *responsive to Request No. 4 and that Defendants are in possession of those documents*." August 20, 2018 Civil Conference Minute Order. In the absence of any such documents, there is no basis – in the first instance – for Plaintiff's renewed application.

16

computers, and searched for documents stored on the old laptop upon discovering it, despite believing that any possible responsive documents would have been deleted. *Id.* ¶¶ 3, 7. Although Plaintiff would like the Court to conduct a credibility assessment of the Defendants and make findings on that basis, such an evaluation is not proper or warranted on the record which currently exists here.

With respect to harm, as that term is defined in caselaw, Plaintiff has not introduced any *evidence* that Plaintiff was harmed as a result of Defendants' untimely production, or prior representations. Plaintiff argues that she incurred significant attorneys' fees in connection with motion practice and non-party discovery in this matter caused by Defendants' prior representations, particularly in connection with Request for Production No. 4. Frustration is understandable; "harm" requires more. A review of the record before the Court indicates that: (1) Plaintiff's first motion to compel was denied in part because the Court found at least one of Plaintiff's discovery requests to be overly broad, *see* DE 25; (2) Plaintiff served a subpoena upon nonparty Citigroup on April 10, 2018, the same day that Plaintiff propounded its discovery requests upon Defendants, *see* Discovery Status Report at 4-5; and (3) none of the documents produced by Citigroup were responsive to Request No. 4. As such, the Court does not find that Plaintiff attorneys' fees, about which she complaints here, were caused by any alleged misconduct committed by Defendants.

With respect to the factors courts consider under Rule 37, the Court underscores that it has no basis establishing that Defendants willfully withheld the documents stored in archived folders on the old laptop. Moreover, the duration of the alleged noncompliance – somewhere between one and three months – is not so lengthy as to warrant sanctions. *Compare Martiny v. Introcaso-Allison*, No. 17-CV-09559, 2019 WL 4593613, at *4 (S.D.N.Y. Sept. 23, 2019)

17

(imposing sanctions, including attorneys' fees, under Rule 37 where defendant failed to comply with court orders over a period of fifteen months).

In sum, Plaintiff seeks sanctions because Defendants produced documents stored in archived folders from an old, recently uncovered, laptop computer approximately three months after the March 24, 2018 discovery response deadline which the Court set at the Initial Conference and approximately one month after the supplemental discovery deadline set by the Court in its July 17, 2018 Decision and Order, despite the fact that Defendants had made prior representations that all responsive documents had been produced. The Court declines to award sanctions in these circumstances, including under 28 U.S.C. § 1927 and the Court's inherent power, particularly since the Court has not been provided with evidence to sustain a finding that Defendants acted in bad faith. Further, the September 10, 2018 production did not cause such meaningful delay in this action as to warrant sanctions. The chronology of this case reflects the substantial lack of trust and animosity between these parties. Regrettably, that factor has impacted how both the parties and counsel interact and how this case has proceeded.

The Court also notes that there is little information in the record detailing the steps Defendants' counsel took to confer with his clients as to the specific discovery requests and what particular review process and oversight procedure counsel put in place to supervise the production made to the Plaintiff. There is no evidence of any outright failure to adequately oversee Defendants' discovery responses. *Compare Markey v. LaPolla Indus., Inc.*, No. CV 12-4622, 2015 WL 5027522, at *20 (E.D.N.Y. Aug. 25, 2015) (finding that evidence compiled at hearing showed that attorneys failed to adequately oversee Plaintiff's document production, including the culling of ESI); *Greene v. Netsmart Technologies, Inc.*, No. CV 08-4971, 2011 WL 2225004, at *9 (E.D.N.Y. Feb. 28, 2011), *report and recommendation adopted*, 2011 WL

2193399 (E.D.N.Y. June 2, 2011) ("it is not possible to know precisely whether the omissions here occurred due to plaintiff's failure to adequately produce documents or his counsel's failure to sufficiently oversee the document retention and collection"). The Court accepts defense counsel's sworn representation that all responsive materials have been disclosed. *See Mirmina v. Genpact LLC*, No. 3:16CV00614, 2017 WL 3189027, at *3 (D. Conn. July 27, 20917).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions is DENIED.

There is a Scheduling Order currently in place. *See* April 26, 2019 Electronic Order. The Court expects that discovery was concluded by the September 26, 2019 deadline. Counsel are reminded that the deadline to file any letter request for a pre-motion conference to Judge Amon for purposes of moving for summary judgment must be filed by October 11, 2019.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge